## KLINE, AD., V. RAGLAND.

1.  TRUSTS: *Husband and wife; Purchase with funds of wife.*
    Where the purchase money for land conveyed to the husband is paid in whole or in part by the wife, she has an equity to have a trust declared and enforced against him to the extent of her payment. But when the consideration is paid by the husband, and the deed taken to the wife, it is presumed a gift by him. and no trust arises in his favor unless he overcome the presumption by evidence of a different intention.

2.  SAME: *Mortgage; Land paid for in part by wife.*
    When part of the consideration for land conveyed to the husband is paid by his wife and part by himself, he has an interest in the land to the extent of his payment, which may be subjected to the payment of his debts, and will be bound by his mortgage of the land and subject to foreclosure for payment of the mortgage debt.

Kline, ad., v. Ragland.

3. ESTATE IN ENTIRETY: *Deed to husband and wife.*
   A deed to husband and wife vests in the grantees an estate in entirety.

4. MORTGAGE: *Title acquired after mortgage.*
   Title acquired by a mortgagor after his mortgage, enures under our statute to the benefit of the mortgagee, without any warranty of title expressed in the mortgage.

5. SUBROGATION: *Paying lien on land.*
   One who lends money to pay off a lien on land is not subrogated to the rights of the lien-holder when the money is so applied.

6. APPROPRIATION OF PAYMENTS: *Running account.*
   When, in the absence of appropriation by a debtor, the creditor appropriates payments from him to a running account, the law will apply them to the items of the account in the order of their dates.

7. SAME: *Debts not due.*
   A creditor cannot appropriate payments to debts not due without the consent of the debtor.

APPEAL from *Yell* Circuit Court.
Hon. B. D. GRANGER, Special Judge.

*Jacoway & Jacoway* for Appellant.

Appellees having acknowledged in writing that the notes were given to secure purchase money are estopped from denying it. *2 Parsons Cont., 6 ed., pp. 786 to 794 and notes; 31 Ark., 728; 30 Id., 177.*

The mortgage having been executed while W. M. Ragland held the title bond, and before the execution of the deed to him and wife, bound whatever interest he had, and no subsequent act could affect this security.

As to the payments, three of the notes were not due when the last payment was made by Ragland. No appropriation having been made by the debtor, the creditor had the right to appropriate the payments. *2 Parsons on Cont., 6 ed., pp. 629 to 635 and notes; Jones on Mortg., secs. 904 to 907.*

A general payment may be applied by the creditor to a claim against the debtor for which he has no security, or among

several claims to that for which he has the least security. *6 Cranch., 8; 7 Cranch, 572; 18 Kans., 345; 9 Cow.* (*N. Y.*), *409; 78 N. Y., 293.* So a general payment must be applied to a debt due rather than to one not yet due. *10 Walls., —; 1 Bibb., 334; 15 Wind., 19; 5 Mason, 11; 9 Cowan, 420.*

A payment cannot be applied to a debt not yet due, except by express agreement of the creditor and debtor. *22 Pick., 305.*

Where a debtor has omitted to make any specific application of the money he has paid, but has left it to be applied as the creditor may see fit, he cannot afterwards go back and make an appropriation of it himself. See *Wilkinson v. Sterne, 9 Mod., 427,* per Lord Hardiwicke; *Mills v. Fowkes, 5 Bing., N. C., 455.*

*Geo. B. Denison* for Appellees.

The proof clearly shows that the notes included individual indebtedness of the husband, and that they were given for the purchase money of the land alone, and appellees are not estopped from showing their true consideration.

The purchase money notes were paid. They were charged to Ragland's account on the books, and were extinguished by payments. Where a portion of the indebtedness is secured, payments made and not applied by the debtor, or by the creditor when received without direction, will be applied by the law to the secured debt as the most burdensome. *2 Pars. Cont., 6 ed., p. 632; 2 Jones Mortg., sec. 907.* Where there is a running account, payments will be applied as made to the earliest items on the debit side. *30 Ark., 745; 34 Id., 285; 38 Id., 285; 39 Id., 248; 9 N. W. Rep., 591,* (*Minn., 1881*).

Plaintiff cannot enforce the mortgage beyond the interest of the husband. It cannot matter that the title bond was to the

7——47

husband, or that the deed was to husband and wife.  As between husband and wife the lots belonged to the wife, and upon proof the court should so decree.  The firm were not innocent purchasers, they knew all about the wife's interest.  The mortgage does not convey any interest of the wife, only her dower.

1. TRUSTS:—  COCKRILL, C. J.   At the time the mortgage which the bill
Husband and
wife: Purchase  in this case seeks to foreclose was executed, the mortgagor
with wife's
funds.  was not the owner of the fee in the mortgaged premises.   He had contracted by bond for title with the person who was seized of the fee to purchase the lands upon the payment of $800.   Of this sum $600 had been paid by his wife to the vendor, out of money given her by her father for the avowed purpose of purchasing a home for her and her children.   It was in pursuance of this purpose that the purchase was made and the money paid.   The bond for title, however, bound the vendor, by its terms, to execute a deed to the husband, upon the payment of the residue of the purchase money, and he executed his notes for the deferred payments.

By this arrangement the husband became the apparent equitable owner of the land, subject to the vendor's lien for the unpaid purchase money; but in fact an equity arose in favor of the wife to the extent of the purchase money paid by her, and would have arisen *in toto* on full payment, to have a trust declared and enforced in her favor against the husband and the vendor.   This is the established equitable rule, where an estate is purchased in the name of one person and the consideration paid by another.   *Tiederman on Real Prop., sec. 500* The whole question in such cases is one of intention.   And so when the husband pays the purchase money and takes the conveyance in the name of his wife, the presumption that he *intended* it as a gift is raised from his obligation to provide for her, and there is, therefore, no presumption of a trust.   *Milner v. Freeman, 40 Ark., 62; Ward v. Estate of Ward, 36 Ark.,*

Kline, ad., v. Ragland.

*586; Gainus v. Cannon, 42 Ib., 503.* On the other hand, where the deed is taken in the name of the husband, the purchase money being paid by the wife, no presumption of an intention to make a gift arises, but there is a resulting trust in favor of the wife, and the husband holds the property thus acquired as trustee for her benefit, unless he is able to overcome the presumption by establishing a different intention. *Cunningham v. Bell, 83 N. C., 328; Thomas v. Standiford, 49 Md., 181; Loftin v. Whitboard, 92 Ill., 461; Moss v. Moss, 95 Ib., 449; Catherwood v. Watson, 65 Ind., 576.*

When it is shown that she intended the purchase for herself, and made the cash payment of the purchase money from her separate means, the fact that the husband takes the conveyance to himself, and executes his individual notes for the unpaid purchase money, does not defeat the trust that arises in her favor to the extent of the payment made by her. *Cunningham v. Bell, supra; Keller v. Keller, 45 Md., 269; Hopkins v. Carey, 23 Miss., 58.* The burden is still upon the husband to repel the presumption of the trust. *Wales v. Newbould, 9 Mich., 45–64; Keller v. Keller, supra.*

This was the wife's attitude toward the premises in question when the husband executed the mortgage in this case. It is not even shown that she knew that her husband was the obligee in the title bond. The mortgagees were cognizant of all the facts. The money which had been paid upon the execution of the title bond was paid by them to the vendor of the land in behalf of the wife. It had been deposited with them by her father with instructions that it should be paid out on her order for the purpose of providing a home for her and her children, and they knew that was the object of the purchase. The money was paid to the vendor in the wife's presence and by her direction, and the title bond was at that time or shortly thereafter placed in the mortgagees' safe for safe keeping. They are not, then, in the attitude of innocent purchasers, but

2. MORTGAGE: By husband, of land paid for in part by wife.

took the premises subject to the wife's equity. *Harris v. Brown, 30 Ala., 401.* The wife appears, however, to have abandoned the intention, if she ever entertained it, of causing the purchase to be completed by payment out of her separate estate. The residue of the purchase money was paid by the husband out of his own means. Money was advanced to him by the mortgagees for that purpose. The amount paid in discharge of the notes executed by him at the time of purchase was one-fourth of the purchase price. To the extent, then, of a one-fourth interest the wife's equity did not attach. The husband's creditors could have subjected the interest thus acquired by him to the payment of his debts, (*Hill v. Bugg, 52 Miss., 397; Heam v. Lander, 11 Bush. (Ky.), 669; Thompson v. Tharp, 3 Metc. (Ky.), 372,*) and a mortgage made by him while the title was in the condition described, bound his interest and vested in the mortgagees the right to subject it, upon · foreclosure, to the payment of the mortgage debt.

3. DEED to husband and wife—Effect of. Before the bill was filed, however, to foreclose the mortgage, the vendor of the land, who held the naked legal title, executed a deed to the husband and wife jointly, in pursuance of instructions received from them to that end. What led to the apparent change of ownership to the husband and wife jointly, we are not informed, and the wife has not complained of the character of the conveyance. The effect of it, according to the case of *Robinson v. Eagle, 29 Ark., 202,* was to vest in the grantees an estate in entirety. But the mortgagees' rights had become fixed by the mortgage before the execution of the deed, and it could not have the effect of discharging the lien that bound the husband's interest. The parties to that deed could do nothing that would deprive the mortgagees of recourse on that interest. As between themselves the husband and wife were seized of an estate in entirety in the whole property, but the wife acquired no interest superior to the mortgage in that part of the premises of which the husband was the

Kline, ad.. v. Ragland.

true owner. The husband, however, acquired a new interest in so much of the land as he had previously held in trust only. That, as we have seen, was a three-fourths interest in the whole. Title acquired to lands by the grantor after his conveyance, passes to the vendee, by virtue of the statute in this state, in all respects as if the same title had been in the grantor at the time of the conveyance. *Crittenden v. Jordan, 14 Ark., 463; Jones v. Green, 41 Ib., 369; Horsly v. Hilburn, 44 Ib., 458.*

We have no reported case in which the statute has been held to apply to a mortgage, but as the mortgage is, with us, as at common law, the conveyance of a conditional estate, and the statute by its terms applies to any conveyance purporting to convey a fee simple or any less estate, (*Mansf. Dig. sec. 642,*) the provisions must be held to apply to mortgages equally as to conveyances absolute in form. *Clark v. Baker, 14 Cal., 612; Vallejo Land Assn. v. Viera, 48 Ib., 572.*

4. MORTGAGE: After acquired title enures to.

The prevailing doctrine of the after acquired title enuring to strengthen the mortgage lien, in the absence of a statutory provision, is that in order to have that effect the conveyance must contain a covenant of warranty or something nearly akin to it. The usual covenant of warranty is not found in the mortgage in this case, but in the *habendum* clause it is recited that the land shall be held by the mortgagees, their heirs and assigns "against the lawful claims and demands of all persons whomsoever." If this is not a specific warranty, it is at least a declaration that the mortgagor purports to convey an estate in fee simple, of which he is seized, subject only to be defeated by payment of the amount named.

Without the aid of the statute referred to, which, as we have heretofore held, modified the rule as to the character of deed required to enable the grantee to take the after acquired title, this conveyance appears to be sufficient to have that effect, but under the statute there can be no doubt of it. *Crittenden v.*

*Johnson, supra; Bigelow Estoppel, 296, n. 1; Clark v. Baker, supra.*

So that when the bill was filed the mortgage bound a one-fourth interest in the land (in which the wife relinquished her right of dower) and also whatever right the husband took in the other three-fourths by the deed to himself and wife.

**5. SUBROGA-TION: Paying lien on land.**

When the notes were executed the mortgagor and his wife signed a written declaration that the entire mortgage debt was for money advanced to the husband to pay off the purchase money due on the lands. It is admitted that this statement is true in part only, a portion of the mortgage debt having accrued upon a store account contracted by the husband; but it is argued that the parties are estopped from denying the truth of the statement, and that the mortgagees are subrogated to the rights and remedies of the vendor of the land whose lien was paid with their money. The position is not tenable upon either ground. Without considering the effect of the coverture of Mrs. Ragland upon the operation of the doctrine of estoppel, it is sufficient to say that the declaration was not an inducement to the lending of the money or the execution of the mortgage, (*Franklin v. Meyer, 36 Ark., 114; Jowers v. Phelps, Ib., 465; Shields v. Smith, 37 Id., 47,*) and was procured by the mortgagees with the full knowledge of its falsity. But if the statement were literally true it would not aid the cause, because the mere advancing or lending money to one to enable him to pay off a lien does not subrogate the lender to the rights of the lien holder when the money is so applied. *Rodman v. Sanders, 44 Ark., 504.*

It does not appear from the written declaration or the proof that there was any agreement or intention at the time the money was advanced or paid to the vendor that these mortgagees should be subrogated to his lien, or that they looked to the land for security. The advance appears to have been made solely upon the personal security of the husband, with whom

Kline, ad., v. Ragland.

the lenders had numerous dealings, and upon a final settlement of accounts the mortgage was taken to secure the balance due them.

But it is claimed that the mortgage has been discharged by payment, and the special judge who tried the case actually so found and caused a decree to be entered upon this ground for the defendants.

<div style="float:right">6. APPROPRIA-<br>TION OF PAY-<br>MENTS: Run-<br>ning account.</div>

The facts upon this branch of the case are these: Ragland, the mortgagor, was in the employ of the mortgagees and received a monthly salary from them. He had a running, store account with the firm. Before either of the notes fell due the partnership between Freed & Block, the mortgagees, was dissolved, and Block became the sole owner of the mortgage notes and the account subsequently contracted by Ragland. He continued the firm business and permitted Ragland's store account to run and increase from month to month. Ragland's monthly salary and certain cash payments made by him were credited on this account as the salary fell due or the payments were made. It appears from the exhibits of the annual accounts stated, that Block charged in the accounts the notes with the interest against Ragland as they matured, just as other items of money advanced or goods furnished, and that the balance of the account so stated, after allowing credits, was carried forward and charged in the next account. If the payments made by Ragland are applied to the items of the account in the order of their dates, the mortgage notes which have been carried into the account will be extinguished and something less than $100 will remain due upon the account, which is not secured by the mortgage. This method of appropriation of payments, as was ruled in *Price v. Dowdy, 34 Ark., 285*, under a like state of facts, will be presumed to have been the intention of the creditor in the absence of countervailing proof. There is no satisfactory proof of any agreement between the parties, at the time of payment or at any time, to show how the payments should be ap-

plied, and the only proof of the actual appropriation is made by the statements of account taken from the mortgagees' books. Block died in July, 1883, soon after the last payment was made. At the time of that payment only two notes were due, and the amount due upon these notes had been entered upon the running account in the manner indicated. Under the circumstances the law made the appropriation of payments to the items in the order of their dates and these two notes were ex-tinguished. *Price v. Dowdy, supra.* The remaining notes had not matured when the last payment was made, and without agreement with his debtor the creditor could not and the law does not appropriate payments to debts not due. *Gates v. Burkett,' 44 Ark.*

7. SAME:—
Debts not due.

The mortgage lien to the extent of these notes remains, and the decree must be reversed and the case remanded, with instructions to enter a decree for the plaintiff for the amount of the three notes maturing last, and interest from date till paid, and if the sum thus found due is not paid, to cause to be sold for its payment, first, a one-fourth undivided interest in the mortgaged premises, and then if necessary whatever interest the husband can convey in the remaining three-fourths.